**MILLER v. O'MALLEY.**

Civ. No. 13–49.

United States District Court
D. Nebraska, Omaha Division.

April 17, 1950.

698

William Ritchie, and Bernard Vinardi, Omaha, Neb., for plaintiff.

Joseph T. Votava, United States Attorney, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This is an action by George A. Miller to recover certain income taxes assessed by George O'Malley, the Collector of Internal Revenue, and paid by the plaintiff under protest. The assessment complained of was made on the net profits of an auto supply business located in Grand Island, Nebraska, known as the Red Rooster Sales Company. The Commissioner found that the net income shall all be credited to George A. Miller and assessed taxes against him accordingly. The Plaintiff contends that the entire business belonged to a family partnership consisting of himself, his wife and his son.

This case has been tried to the court and the court makes the following special

### Findings of Fact

1. George A. Miller, Robert B. Miller and Bertha A. Miller did, on the 2nd day of January, 1944, enter into a partnership agreement which was executed according to the formalities required by law.

2. The partnership took the name Red Rooster Sales Company; and the assets of the partnership consisted of $60,000 of the assets of the sole proprietorship of the same name, which was owned by George A. Miller. The business of the sole proprietorship was completely taken over by the new partnership, and although George A. Miller did not actually withdraw the working capital of the former proprietorship, which exceeded $60,000, the books were set up so that all the capital in the business at the time the partnership was created, which exceeded $60,000, was entered in the partnership books as part of George A. Miller's personal account. The assets of the sole proprietorship were $132,000, the assets of the partnership were $60,000, and the balance left in George A. Miller's personal account was $72,000. The partnership agreement provided that the partners were to share in the income from the business in the following proportions:

George A. Miller 50%; Robert B. Miller 30%; Bertha A. Miller 20%.

3. George A. Miller did not create the partnership with the primary intention of avoiding taxes. For years he had held the business as a sole proprietorship so that he might some day take in his son and his wife as partners. In 1944, he did just that. In view of this long standing intention, the court finds that he set up the partnership in good faith, even though it was to his advantage taxwise.

4. Both Bertha A. Miller and Robert B. Miller acquired their interest in the partnership capital by gifts from George A. Miller. The gifts were valid for gift tax purposes and a gift tax return was filed.

5. After the partnership was created, both Bertha A. Miller and Robert B. Miller were allowed to draw checks on the Red Rooster Company accounts in the Commercial National Bank, the Overland National Bank, and the First National Bank, all of Grand Island, Nebraska. Both Bertha A. Miller and Robert B. Miller did draw money from such accounts for their own personal use. For example, Robert withdrew $1500 for a vacation in the East. However, it should be noted that a considerable portion of the money withdrawn was used to pay their income taxes.

6. Bertha A. Miller married George A. Miller just two years after he had started the Red Rooster Sales Company, the sole proprietorship. She was, at the time of her marriage, a woman skilled

in business matters. This was evidenced by the fact that she was a trained nurse holding the position of general superintendent of the Grand Island General Hospital. From the time of her marriage to the present day she has rendered substantial services to the Red Rooster Sales Company. At the end of each month Bertha A. Miller would help figure salesmen's commissions and at the end of the year she would assist in the arduous task of taking inventory. She also helped in getting out advertising material and other clerical work. Her husband would confide in her and at times he sought after, and received from her, advice which he considered helpful in the management of the business. Her services were necessarily limited when her son was born, but at the time the partnership agreement was entered into, the son was sixteen years of age and the testimony is that after that time Bertha A. Miller's services to the business "if anything, increased". She took part in the business conferences with the managers of the business and the other partners and she also went to business conventions in Kansas City and Chicago. All in all, Bertha A. Miller contributed substantial services to the Red Rooster Sales Company, a partnership.

■ 7. Robert B. Miller was only 16 years of age when the partnership agreement was entered into and there is no indication that at this time he was specially skilled in the operation of the business. It is true that in the four years that followed, Robert B. Miller increased his skill in business affairs. He has taken an active part in business conferences with the other partners and has also attended the business conventions in Chicago and Kansas City. He has completed educational courses in business administration at the University and is presently pursuing a course in business law. We can not overlook the fact that during the four years in question, Robert B. Miller rendered certain services to the Red Rooster Sales Company, but we are forced to conclude that these services were very limited. While attending school, Robert B. Miller could donate his services only during the off hours and summer vacations. And even part of the summer vacations were utilized for other purposes. One summer he took a vacation in the East in anticipation of military service and the time when no vacations would be possible. Another summer he spent in summer school furthering his education. Though, in the court's opinion, Robert B. Miller is fully capable of rendering adequate services to the company now, the evidence does not indicate that any substantial services were actually rendered during the period in question.

## Discussion

■ This case presents some very intricate tax problems in connection with a family partnership arrangement. It is well settled that a partnership *can* exist between husband and wife, parent and child, or other members of the same family unit and that such an association may effectively split the income of a business or enterprise among them for tax purposes. However, courts are not required to shut their eyes to tax avoidance schemes merely because they are clothed in the formalities of a business association. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135. The question is whether the combination is a real business partnership or merely a sham utilized as an income splitting device. This problem has presented itself to the Supreme Court of the United States on three different occasions. In the first two instances, the Tax Court had found that there was no substance to a claimed partnership between a taxpayer and his wife and that the income from the business was taxable to the taxpayer. The Supreme Court upheld the Tax Court in both instances. Commissioner v. Tower, supra, and Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L. Ed. 679. The court, admitting that a wife could be a partner with her husband, where she contributes capital or services, said: "But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determin-

ing whether the partnership is real within the meaning of the federal revenue laws." Commissioner v. Tower, supra, 327 U.S. at page 290, 66 S.Ct. at page 537, 90 L.Ed. 670, 164 A.L.R. 1135.

Since the decision of both of the above cases seemed to hinge on the quoted rationalization, the lower courts adopted the rule that to give such reality to an asserted family partnership as to warrant or require its recognition for federal income tax purposes, there must be either some vital material contribution of capital or material rendition of services by the nonoriginator of the enterprise. See 6 Mertens, Laws of Federal Income Taxation, Section 35.09a, p. 134 (1948 Ed.), citing Simmons v. Commissioner, 5 Cir., 1947, 164 F.2d 220; Livie v. Commissioner, 6 Cir., 1946, 155 F.2d 728; and many other cases.

The sequel to the Tower and Lusthaus cases, Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, is a reproach to the interpretation of these two earlier cases by the Tax Court. Mr. Chief Justice Vinson, speaking for a majority of the court, states: "It (the Tax Court) treated as essential to membership in a family partnership for tax purposes the contribution of either 'vital services' or 'original capital.' Use of these 'tests' of partnership indicates, at best, an error in emphasis." Commissioner v. Culbertson, supra, 337 U.S. at page 741, 69 S.Ct. at page 1213.

Pointing out that the ultimate question for decision is "Whether the partnership is real within the meaning of the federal revenue laws", the court sets forth the factors which should be considered in answering this question in any given situation: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner v. Culbertson, supra, 337 U.S. at page 742, 69 S.Ct. at page 1214.

The court makes it clear that the triers of fact should determine the subjective intent with which the parties acted in forming the partnership. "Whether the parties really intended to carry on business as partners is not, we think, any more difficult of determination or the manifestations of such intent any less perceptible than is ordinarily true of inquiries into the subjective." Commissioner v. Culbertson, supra, 337 U.S. at page 743, 69 S.Ct. at page 1215.

It is true that where the partner contributes neither vital services nor original capital it has the effect of placing a heavy burden on the taxpayer of showing a bona fide intent to join together as partners. But this is not conclusive. "If, upon a consideration of all the facts, it is found that the partners joined together in good faith to conduct a business, having agreed that the services or capital to be contributed presently by each is of such value to the partnership that the contributor should participate in the distribution of profits, that is sufficient." Commissioner v. Culbertson, supra, 337 U.S. at page 745, 69 S.Ct. at page 1215.

With these tests clearly in mind, we shall proceed to apply them to the facts of the situation presently before the court. We shall first consider the plaintiff's relationship with his son in the partnership arrangement. Though there might have been some doubt as to partial recognition of partnerships under the earlier cases, the order of the Supreme Court in the Culbertson case remanding the cause for a finding " * * * as to which, if any, of respondent's sons were partners with him in the operation of the ranch during 1940 and 1941 * * *." seems to indicate that a partnership may be partially recognized for tax purposes. And we shall proceed upon that assumption.

■ In the present case, Robert B. Miller did sign the partnership agreement, along with his father and mother. However, after signing of the agreement, there is no indication that he exercised any control over the conduct of the business to any substantial extent. He was not specially skilled at the time the agreement was entered into and the only capital which he contributed was that which was given to him by his father, the originator of the enterprise. Considering the facts, the question to be answered is "whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." The court feels that the parties were acting in good faith, but since Robert B. Miller's time these past four years was spent primarily in school, the court does not feel that there was an intention to join together in the present conduct of the business. The Supreme Court was very specific in stating that "The intent to provide money, goods, labor, or skill sometime in the future cannot meet the demands of §§ 11 and 22(a) of the Code [26 U.S.C.A. §§ 11, 22(a)] that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income." Commissioner v. Culbertson, supra, 337 U.S. at page 740, 69 S.Ct. at page 1213.

The court is not unmindful of Mr. Justice Burton's statement in the concurring opinion that "A present commitment to render future services to a partnership is in itself a material consideration to be weighed with all other material considerations for the purposes of taxation as well as for other partnership purposes." Commissioner v. Culbertson, supra, 337 U.S. at page 749, 69 S.Ct. at page 1218.

For even assuming that this is the law of the case, which is not clear from the majority opinion, there was no evidence to show that Robert B. Miller would be bound to continue the partnership for a period of years and to render services thereto after the completion of his education, even though the court is convinced that he had the bona fide intention of doing just that.

For the reasons set out above, the court does not feel that Robert B. Miller and his father, George A. Miller, intended to join together in the *present* conduct of the enterprise, and that Robert B. Miller should not be considered a partner for purposes of the federal revenue laws during the years in question.

■ An entirely different situation appears with respect to Bertha A. Miller. The evidence is that at the time the partnership was entered into she was a woman skilled in business. And throughout the years in question she contributed substantial services to the enterprise (especially when you consider that she is a partner only to the extent of 20% of the income). Though she did not contribute independent capital, it is clear that all the capital which George A. Miller put into the business was earned during the early years of his marriage while she was assisting him in the sole proprietorship and which she had actually and substantially helped him acquire. The court feels that Bertha A. Miller and George A. Miller entered into the partnership agreement in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.

The court is not moved by the Commissioner's contention that Bertha A. Miller should be considered a partner only to the extent of 20% of 60/132, because only $60,000 of the $132,000 of the original sole proprietorship was entered into the partnership books as partnership property and the balance was left on the books as part of George A. Miller's personal account. It was his intention that they were to have no share in this capital and that he could withdraw it as he saw fit. There is no evidence that this partnership fund was used in the partnership business; and even if it were, the court would not alter its opinion. Bertha A. Miller's interest is not based on any capital contribution, nor does it have to be proportionate to any capital contribution. Her interest is based on the partnership agreement giving her a 20% interest

in the income from the business of The Red Rooster Sales Company, a partnership. It would not have been necessary for her to contribute any capital. Bertha A. Miller has contributed substantial services and is entitled to share in the profits in accordance with the agreement.

For the reasons set out above, the court is constrained to hold that Robert B. Miller was not a partner in the Red Rooster Sales Company for purposes of the federal revenue laws; that Bertha A. Miller was a partner of the Red Rooster Sales Company to the extent of 20% of the income of the business.

This Collector should recompute the income tax on the Red Rooster Sales Company profits in the following proportions: Bertha A. Miller 20%, George A. Miller 80%.

Judgment will be entered accordingly.